UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                       :

ALBERT BELL,
                           Petitioner,               : 09 Civ. 7218 (PKC) (GWG)

       -v.-                                : REPORT AND RECOMMENDATION

WARDEN ANNA M. KROSS CENTER,       :
NEW YORK STATE DIVISION OF PAROLE,
                                              :

                     Respondent.             :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Albert Bell, an inmate at the Great Meadow Correctional Facility in Comstock, New

York, brings this pro se petition for a writ of habeas corpus challenging the revocation of his

parole in 2007 on the grounds that his preliminary hearing was not timely held and that he was

not provided counsel.  For the reasons stated below, the petition should be denied.

I.      BACKGROUND

      A.     Bell's Parole Violation

      On November 13, 1978, Bell was sentenced to a prison term of 15 years to life as a result

of a conviction for murder in the second degree.  See Certificate of Release to Parole

Supervision (annexed as Ex. K to Declaration in Opposition to the Petition for a Writ of Habeas

Corpus, filed Jan. 29, 2010 (Docket # 9) ("Resp. Decl.")).  On March 8, 2001, Bell was released

on parole, having agreed to certain conditions of release.  Id.  Among these conditions of release

was the requirement that Bell participate in substance abuse counseling at the discretion of his

parole officer.  Id.

      In November 2005, Bell was discharged from his drug treatment program for

nonattendance.  See Transcript of Preliminary Hearing (annexed as Ex. T to Resp. Decl.) ("Tr.")

at 16-17.  On December 2, 2005, the Division of Parole issued a parole violation warrant.  See

Parole Status Inquiry (annexed as Ex. R to Resp. Decl.).  The warrant contained three charges,

including charges that Bell failed to participate in and was discharged from the drug treatment

program.  See Violation of Release Report (annexed as Ex. M to Resp. Decl.) ("Violation

Report").  Bell also was charged with failing to report to his parole officer.  Id.  Because Bell

could not be located, see Supplementary Violation of Release Report (annexed as Ex. O to Resp.

Decl.), Bell was not presented with the notice of violation and violation of release report until

May 15, 2006, see Notice of Violation (annexed as Ex. L to Resp. Decl.); Violation Report.

     B.    State Proceedings

        1.    Preliminary Hearing

Bell's preliminary hearing was initially scheduled to take place on May 22, 2006.  See

Notice of Violation.  Because Bell became ill and was hospitalized, the hearing was not held on

that date.  See Parolee Chronology Report (annexed as Ex. S to Resp. Decl.).  The preliminary

hearing took place at Bellevue Hospital on June 2, 2006.  See Tr.  At the hearing, the hearing

officer explained the nature of the hearing and Bell's rights to testify, to review evidence, and to

call and cross-examine witnesses.  (Tr. 3-4.)  The hearing officer also explained that there is a

limited right to an attorney at a preliminary hearing, but an absolute right to an attorney at the

final revocation hearing.  (Tr. 4.)  The hearing officer then reviewed the documents relating to

the charges, including the notice of violation, the violation of release report, the supplemental

violation of release report, a case summary, and the conditions of release to parole supervision.

(Tr. 4-5.)

The hearing officer inquired about Bell's education, his ability to read and write, and

whether he had any history of mental illness or was taking psychotropic medications.  (Tr. 11-12.)  Bell indicated he was not taking psychotropic medications, but was taking other medications.  (Tr. 12.)  The hearing officer then asked the parole officer if there was any mention of mental illness in the case folder, and whether there was any psychiatric history.  (Tr. 12.)  The parole officer indicated that there was not, although Bell had been released with the condition that he go for a mental health referral.  (Tr. 12.)  The hearing officer then made the determination that Bell was able to proceed on his own behalf.  (Tr. 12.)

Bell's parole officer read the first charge and sought to amend the date on which Bell had first failed to report for supervision.  (Tr. 13.)  The hearing officer explained the parole officer's request and asked Bell if he wanted to waive notice of this change.  (Tr. 13.)  Bell indicated that he did not understand and asked "Can I get some help."  (Tr. 14.)  The hearing officer then went off the record.  (Tr. 14.)  After coming back on the record, the hearing officer stated that Bell did not wish to waive notice and the Division of Parole would have to move forward on a different charge.  (Tr. 14.)

Bell's parole officer then read the second charge, which alleged that Bell had been discharged from the board-mandated drug treatment program.  (Tr. 14-15.)  The hearing officer entered a plea of not guilty on Bell's behalf and asked the parole officer to present his case.  (Tr. 15.)  The parole officer then testified as to his communications with the head of Bell's drug treatment program regarding Bell's nonattendance and eventual discharge.  (Tr. 15-17.)  Bell then testified that there had been no need for him to enter into the drug treatment program and that it interfered with his ability to pick up his son from school.  (Tr. 19-23, 26.)  Bell indicated that he had discussed this matter repeatedly with his parole officer.  (Tr. 19-23.)  The hearing

officer asked Bell's parole officer if there had been any history of drug use, and the parole officer indicated that it had been suspected but not proven.  (Tr. 23.)

The hearing officer then indicated that she was finding probable cause for Bell's parole revocation proceedings, based on the testimony from Bell and his parole officer as well as a review of the documents.  Tr. 26; see also Preliminary Violation Hearing Decision and Summary (annexed as Ex. U to Resp. Decl.).

## 2.  State Court Petition for Writ of Habeas Corpus

On June 22, 2007, Bell, through counsel, filed a petition for a writ of habeas corpus in the New York State Supreme Court, Bronx County, on the grounds that "(a) his right to a timely preliminary hearing was denied in violation of the Due Process Clause of the Fourteenth Amendment, the New York State Constitution, and N.Y. Executive Law §§ 259-i(3)(a)(4), 259-i(3)(c)(i), (iii) and (iv); and (b) his right to counsel at the preliminary hearing was abrogated." Petition for a Writ of Habeas Corpus (annexed as Ex. A to Resp. Decl.) ("State Habeas Petition"), at 2.

On October 2, 2007, the state court issued its decision denying Bell's petition for habeas corpus on the merits.  See Writ of Habeas Corpus Decision (annexed as Ex. D to Resp. Decl.) ("State Habeas Decision").[1]  The state court noted that Bell was not prejudiced by the delay in his preliminary hearing, id. at 2, and determined that Bell had been "afforded a timely hearing within the period prescribed by [state] law," id. at 3.  The court did not address Bell's federal constitutional due process claim.  See id.  Regarding Bell's claim that he should have been appointed counsel, the court noted that: (1) "the Parole Board found at the hearing that the

---

[1] The Court has assigned page numbers to this document.

petitioner was able to proceed with the preliminary hearing without an attorney present";
(2) "nowhere in the record does it appear that the petitioner requested an attorney at any time";
(3) the issue of Bell's failure to report for a parole supervision drug program was "not a complex issue to understand or present without the assistance of counsel"; and (4) Bell was represented by counsel at his final revocation hearing. Id. at 4. On that basis, the court found that Bell was not denied the right to counsel. Id.

Bell appealed the denial of his habeas petition to the Appellate Division, First Department. See Brief for Petitioner-Appellant, dated June 2008 (annexed as Ex. E to Resp. Decl.). On November 25, 2008, the Appellate Division affirmed the lower court's decision. See Decision and Order with Notice of Entry (annexed as Ex. G to Resp. Decl.). The Appellate Division noted that "[t]here was no violation of the 15-day time limit for scheduling a preliminary parole revocation hearing" where the hearing was rescheduled "due to petitioner's hospitalization" and the delay was "without prejudice to petitioner," id. at 74 (citing N.Y. Exec. Law § 259-i(3)(c)(iv)), and that Bell was not entitled to counsel "where he made no request for counsel, the issue to be decided at the hearing was not complex, and petitioner had counsel for the final hearing," id. at 75.

On December 31, 2008, Bell sought leave to appeal to the Court of Appeals, see Letter from Adrienne Hale to Hon. Stuart M. Cohen, Clerk of the Court (Dec. 31, 2008) (annexed as Ex. H to Resp. Decl.), which was denied on March 26, 2009, see Order (annexed as Ex. J to Resp. Decl.).

### 3.      Final Revocation Hearing and Appeal

In the meantime, Bell's final revocation hearing was held before an Administrative Law

5

Judge ("ALJ") on June 28 and July 5, 2007.  See Transcript of Final Hearing (annexed as Ex. V. to Resp. Decl.).  Bell was represented by counsel at this hearing.  Id.  On July 5, 2007, the ALJ recommended revocation of Bell's parole with a time assessment of 120 months.  See Reasons for Recommendation of Delinquent Time Assessment Which Requires Board Action (annexed as Ex. W to Resp. Decl.).  The ALJ's recommendation was affirmed by the Commissioner of the Division of Parole on July 13, 2007.  Id.  Bell appealed this decision administratively.  See Letter from Albert Bell to Division of Parole (Nov. 23, 2007) (annexed as Ex. Y to Resp. Decl.); Letter from Lester Helfman to Appeals Unit, Division of Parole (Feb. 6, 2008) (annexed as Ex. Z to Resp. Decl.).  But the Division of Parole Appeals Unit affirmed Bell's parole revocation and the 120-month time assessment.  See Administrative Appeal Decision Notice (annexed as Ex. AA to Resp. Decl.).  On May 29, 2009, Bell, through counsel, filed an Article 78 petition in the Supreme Court, Albany County, arguing that the time assessment was excessive.  See Verified Petition (annexed as Ex. BB to Resp. Decl.).  On December 10, 2009, the court dismissed Bell's Article 78 petition on the merits.  See Decision and Order, filed Dec. 10, 2009 (annexed as Ex. DD to Resp. Decl.).  On January 5, 2010, Bell filed a Notice of Appeal to the Appellate Division, Third Department.  See Notice of Appeal (annexed as Ex. EE to Resp. Decl.).

      C.     The Instant Petition

The instant petition seeking a writ of habeas corpus was received by the pro se office of this court on July 27, 2009 and was filed on August 17, 2009.  See Petition for a Writ of Habeas Corpus, filed Aug. 17, 2009 (Docket # 1) ("Petition"); Memorandum of Law in Support of a Petition Made Pursuant to 28 U.S.C. § 2254, dated July 23, 2009 (annexed to Petition) ("Pet. Mem.").  Bell seeks relief on two grounds: that "his right to a timely preliminary hearing was

denied in violation of the Due Process Clause of the Fourteen[th] Amendment, the New York

State Constitution, and New York Executive Law §§ 259-i(3)(a)(4), 259-i(3)(c)(i), (iii) and (iv),"

and that "his right to counsel at the preliminary hearing was abrogated."  Id. ¶ 7.  The respondent

filed opposition papers.  See Resp. Decl.; Memorandum of Law in Opposition to the Petition for

a Writ of Habeas Corpus, filed Jan. 29, 2010 (Docket # 10) ("Resp. Mem.").  Bell replied by

letter dated February 25, 2010.  See Letter from Albert Bell, filed Mar. 5, 2010 (Docket # 11).

II.    APPLICABLE LAW

       A.    The Legal Standard for Petitions Brought Pursuant to 28 U.S.C. § 2254

       A petition for a writ of habeas corpus may not be granted with respect to any claim that

has been "adjudicated on the merits" in the state courts unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

       For a claim to be adjudicated "on the merits" within the meaning of section 2254(d), it

must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the

substance of the claim advanced, rather than on a procedural, or other, ground."  Sellan v.

Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).  As long as "there is nothing in

its decision to indicate that the claims were decided on anything but substantive grounds," a state

court decision will be considered to be "adjudicated on the merits" even if it fails to mention the

federal claim and no relevant federal case law is cited.  Aparicio v. Artuz, 269 F.3d 78, 94 (2d

Cir. 2001); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir.) ("This standard of review

applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, 546 U.S. 889 (2005). Moreover, a state court's determination of a factual issue is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.  Rather, the state court's application must have been "objectively unreasonable."  Id. at 409; accord Renico v. Lett,  – S.Ct. –, 2010 WL 1740525, at *5 (May 3, 2010).  The "determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question."  Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009).  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations" inasmuch as the application of a general standard to a specific case "can demand a substantial element of judgment."  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Brisco, 565 F.3d at 90 (court applying a "fact-dependent standard . . . to the facts of a specific case is . . .

entitled to significant 'leeway' when [a habeas court] review[s] its decision for reasonableness" (quoting <u>Yarborough</u>, 541 U.S. at 664)).

Only holdings of the Supreme Court are considered for purposes of determining "clearly established Federal law." <u>Rodriguez v. Miller</u>, 537 F.3d 102, 106 (2d Cir. 2008) (citation omitted). Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." <u>Id.</u> at 106-07 (citation omitted). Where there is "[n]o holding" from the Supreme Court on the question presented, <u>Carey v. Musladin</u>, 549 U.S. 70, 77 (2006), or where Supreme Court cases "give no clear answer" to the question presented in the petition, <u>Wright v. Van Patten</u>, 552 U.S. 120, 126 (2008) (per curiam), a state court's decision cannot be contrary to or an unreasonable application of clearly established federal law.

B.      <u>Exhaustion</u>

Habeas corpus relief under 28 U.S.C. § 2254 is available to a petitioner held in state custody in violation of the Constitution or a federal law or treaty. <u>See</u> 28 U.S.C. § 2254(a). "Before a federal court may grant habeas relief to a state prisoner," however, "the prisoner must exhaust his remedies in state court." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>see</u> 28 U.S.C. § 2254(b)(1)(A). The Supreme Court has held that:

> [b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

<u>O'Sullivan</u>, 526 U.S. at 845; <u>accord</u> <u>Smith v. Duncan</u>, 411 F.3d 340, 347 (2d Cir. 2005). Thus, a petitioner is required to have presented each claim to all available levels of the state courts. <u>See</u>,

e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)") (citations and internal quotation marks omitted).  The petitioner must also have fairly presented the "federal nature" of each claim to the state courts.  Id.; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rosa, 396 F.3d at 217.

      C.     Due Process Requirements for Parole Revocation Hearings

      The Supreme Court has held that the revocation of parole implicates the Due Process Clause of the Fourteenth Amendment.  See, e.g., Morrissey v. Brewer, 408 U.S. 471, 482 (1972); accord Greenholtz v. Inmates of the Neb. Penal & Corr. Complex, 442 U.S. 1, 9 (1979). However, given the "overwhelming" state interest in being able to return to prison a parolee who has violated his conditions of parole "without the burden of a new adversary criminal trial," Morrissey, 408 U.S. at 483, the Due Process Clause requires only that an "informal hearing" be held "to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior," id. at 484.  The Supreme Court noted that there would be "two important stages in the typical process of parole revocation."  Id. at 485.  First, a preliminary hearing should be held "as promptly as convenient after arrest . . . to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions."  Id.  Second, a final revocation hearing must be held "within a reasonable time" to allow for a "final evaluation of any contested relevant facts" and to give the parolee an opportunity "to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation."  Id. at

488.  The "minimum requirements of due process" at the final revocation hearing include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee
> of evidence against him; (c) opportunity to be heard in person and to present
> witnesses and documentary evidence; (d) the right to confront and cross-examine
> adverse witnesses (unless the hearing officer specifically finds good cause for not
> allowing confrontation); (e) a "neutral and detached" hearing body such as a
> traditional parole board . . . ; and (f) a written statement by the factfinders as to
> the evidence relied on and reasons for revoking parole.

Id. at 489; accord Calhoun v. N.Y. State Div. of Parole Officers, 999 F.2d 647, 652 (2d Cir.

1993) ("Where a state provides a system of parole, it may not revoke a person's parole without

providing minimum due process protections.  The state must provide a preliminary probable

cause hearing . . . , as well as a final revocation hearing, at which a parolee may present evidence

and confront witnesses." (citing Morrissey, 408 U.S. at 487-89)).

III.    DISCUSSION

    A.    Exhaustion

    Bell's grounds for habeas corpus relief are that he was denied due process of law when

his preliminary parole revocation hearing was not held within 15 days of the execution of the

parole violation warrant, the time period provided under State law, see N.Y. Exec. Law §§ 259-

i(3)(c)(i), (iv), and that he was denied his right to appointed counsel at the preliminary hearing.

See Petition ¶ 7.  Bell raised these claims in his state habeas petition, in his appeal to the

Appellate Division, and in his letter seeking leave to appeal to the Court of Appeals.  See State

Habeas Petition; Brief for Petitioner-Appellant, dated June 2008 (annexed as Ex. E to Resp.

Decl.); Letter from Adrienne Hale to Hon. Stuart M. Cohen, Clerk of the Court (Dec. 31, 2008)

(annexed as Ex. H to Resp. Decl.).

    The respondent contends that Bell has not exhausted these claims because "a state habeas

petition is not the appropriate vehicle for requesting such relief."  Resp. Mem. at 11.  The respondent argues that Bell should have raised his claims through an Article 78 petition.  Id. at 11-12.  The cases relied upon by the respondent in support of this argument, however, are cases involving habeas petitions challenging denials of parole, not revocations of parole.  See id.  Under New York law, denial of parole is not subject to state habeas review not only because parole decisions are discretionary but also because a prisoner – unlike an individual who has already been released on parole – does not yet have a liberty interest in parole, and thus would not be entitled to immediate release if his claims were found to be meritorious.  See, e.g., People ex rel. Quartararo v. Demskie, 238 A.D.2d 792, 793 (3d Dep't), lv. denied, 90 N.Y.2d 802 (1997).

By contrast, it appears that New York courts regularly entertain habeas petitions challenging the timing of parole revocation proceedings.  See, e.g., People ex rel. Moore v. Warden, 36 A.D.3d 494 (1st Dep't 2007); People ex rel. McDaniel v. Berbary, 35 A.D.3d 1172 (4th Dep't 2006); People ex rel. Morant v. Warden, 35 A.D.3d 208 (1st Dep't 2006); People ex rel. Pino v. Amacucci, 300 A.D.2d 607 (2d Dep't 2002); see also People ex rel. Dell v. Walker, 186 A.D.2d 1043, 1043 (4th Dep't) (habeas is "generally the appropriate means to challenge a revocation of parole"), lv. denied, 81 N.Y.2d 702 (1992); People ex rel. Lee v. N.Y. State Bd. of Parole, 165 A.D.2d 959, 960 (3d Dep't 1990) (alleged due process violation in parole revocation hearing "clearly a proper subject of a habeas corpus proceeding"); People ex rel. Saafir v. Mantello, 163 A.D.2d 824, 825 (4th Dep't 1990) ("[c]ontrary to respondents' contention, habeas corpus is a proper remedy for the review of parole revocation proceedings").  Moreover, the state courts in this case in fact entertained Bell's petition, did not convert it to an Article 78

12

proceeding, and ruled on the merits of his claims.  Indeed, because Bell had already fully

presented these claims in his state habeas petition, he would have been precluded from raising

them in his later Article 78 petition.  See, e.g., Mack v. Alexander, 61 A.D.3d 1222, 1223 (3d

Dep't 2009) (having raised claims relating to the preliminary hearing in a state habeas petition,

parolee was "precluded from relitigating both the issues raised by him in that proceeding and

new arguments related to the charges and preliminary hearing" in his later Article 78 petition).

Thus, because Bell presented the state courts with a "full and fair opportunity to resolve [his]

federal constitutional claims," O'Sullivan, 526 U.S. at 845, they are exhausted.

      B.     Merits of Bell's Petition

            1.     Timing of the Preliminary Hearing

Bell claims that his due process rights were violated because his preliminary hearing was

not held within 15 days of the execution of his parole violation warrant, as required by New

York State law.  See Pet. Mem. at 14.  The state court determined that Bell's hearing was not

untimely under New York law.  See State Habeas Decision.  Although the state court decision

did not explicitly address Bell's federal due process claim, there is no suggestion that the state

court relied on any procedural bar in adjudicating Bell's petition and thus we view its as having

adjudicated the federal claim "on the merits" for purposes of 28 U.S.C. § 2254(d).  See, e.g.,

Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006) ("Although the Appellate Division's

summary rejection of Mosby's coram nobis petition did not mention Mosby's federal claim, it

nonetheless constituted an adjudication on the merits."), cert. denied, 552 U.S. 836 (2007); Rosa,

396 F.3d at 220 (deferential standard of review applies "whenever the state court has adjudicated

the federal claim on the merits, regardless of whether the court has alluded to federal law in its

decision"); Dallio v. Spitzer, 343 F.3d 553, 560 (2d Cir. 2003) ("[T]o qualify as an adjudication 'on the merits,' a state court decision need not mention a particular argument or explain the reasons for rejecting it."), cert. denied, 541 U.S. 961 (2004). Because Bell has provided no evidence to the contrary, see 28 U.S.C. § 2254(e)(1), we presume the correctness of the state court's factual findings, see State Habeas Decision at 2, that Bell's hearing occurred 18 days after the execution of the warrant, that the delay was due to Bell's hospitalization, and that Bell was not prejudiced by the delay.

Bell's argument that he was denied due process is based largely upon N.Y. Exec. Law §§ 259-i(3)(c)(i), (iv), which mandates that preliminary hearings be scheduled within 15 days of the execution of the parole violation warrant. See Pet. Mem. at 14. To the extent that Bell's claim relies upon state law, it must be denied because violations of state law are not cognizable on habeas review. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("federal habeas corpus relief does not lie for errors of state law"); Vasquez v. Walker, 2004 WL 594646, at *4 (S.D.N.Y. Mar. 25, 2004) ("[v]iolations of state statutory rights are not reviewable by federal habeas courts"). Nor does the state statute Bell cites create any federal due process right. See Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003) ("state statutes do not create federally protected due process entitlements to specific state-mandated procedures").

The claim that the 18-day period violates the federal Due Process Clause must similarly be rejected. The Supreme Court has held only that a parolee has a due process right to a preliminary hearing held "as promptly as convenient" after the execution of the warrant. Morrissey, 408 U.S. at 485. The Supreme Court has not specified what length of time would violate due process. Thus, the state court determination that Bell's due process rights were not

violated cannot be characterized as "contrary to" or involving an "unreasonable application of" clearly established federal law, see 28 U.S.C. § 2254(d)(1), where Bell's preliminary hearing was delayed due to his hospitalization and Bell has not alleged that he was prejudiced in any way by the delay.

.           2.      Failure to Appoint Counsel

Bell contends that his right to due process was violated by the hearing officer's failure to appoint counsel for the preliminary hearing.  See Petition ¶ 7; Pet. Mem. at 14-17.  He argues that he should have been provided counsel because he was "heavily medicated for a serious illness" at the time of his preliminary hearing, which occurred "in the hospital while [he was] under a doctor[']s care."  Pet. Mem. at 14.

Under Supreme Court precedent, any right to counsel at parole revocation hearings is limited.  In Gagnon v. Scarpelli, 411 U.S. 778 (1973), which addressed the provision of counsel during the probation revocation process as a whole without distinguishing between preliminary and final hearings,[2] the Court stated that it found

> no justification for a new inflexible constitutional rule with respect to the requirement of counsel.  We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system.  Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness – the touchstone of due process – will require that the State provide at its expense counsel for indigent probationers or parolees.

> It is neither possible nor prudent to attempt to formulate a precise and detailed set

---

[2] The Supreme Court noted that it perceived no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation."  Gagnon, 411 U.S. at 782.

of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements.  The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision.  Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.  In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself.  In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.

Id. at 790-91.

Given the "considerable discretion" afforded parole officials and Gagnon's recognition that it could not fashion a uniform rule, it cannot be said that the state courts's decision in Bell's case to uphold the parole officials' actions constituted an unreasonable application of Gagnon. See, e.g., Wright, 552 U.S. at 126 (deference due to state court decision where Supreme Court cases "give no clear answer" to the question at issue).  The state court made a factual determination that Bell did not request counsel at his preliminary hearing, see State Habeas Decision at 4, a factual determination that we presume to be correct under 28 U.S.C. § 2254(e)(1).[3]  Moreover, there is nothing to suggest that the "considerable discretion" afforded to the state by the Supreme Court's language in Gagnon was abused through the decision to

---

[3] The transcript of the hearing reflects that Bell made only one statement that could be construed as a request for counsel, when he asked "Can I get some help?" in response to the hearing officer's question as to whether Bell wanted to waive notice as to the parole officer's proposed change to the first charge.  (Tr. 14.)  After Bell asked this, there was a discussion off the record and the hearing officer proceeded to the next charge.

conduct Bell's preliminary hearing without counsel.  The issue to be determined at Bell's

preliminary hearing – whether he had reported to his drug treatment program – was not complex.

There is nothing in the record that suggests that Bell was unable to understand this charge.

Indeed, Bell explained in detail why he believed his failure to appear was justified.  (Tr. 19-23.)

Ultimately, Bell was provided with counsel at his final revocation hearing – a circumstance that

has led some courts to conclude that there is no right to counsel at the preliminary hearing at all.

See generally Merlino v. Mich. Dep't of Corr., 2006 WL 176422, at *2 (E.D. Mich. Jan. 24,

2006) ("[T]he Court cannot find that a parolee has a federal constitutional right to an attorney at

a preliminary revocation hearing, particularly where the parolee was represented by an attorney

at the final revocation hearing." (construing Gagnon)); accord Maule v. Crawford, 2009 WL

559876, at *9 (W.D. Mich. Mar. 4, 2009) (citing Merlino, 2006 WL 176422, at *2).[4]

   In sum, the Appellate Division decision was not "contrary to" and did not involve an

"unreasonable application of" clearly established federal law.  See 28 U.S.C. § 2254(d)(1).

IV.    CONCLUSION

   For the foregoing reasons, the petition should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

---

   [4] Moreover, it would seem that any failure to provide counsel at the preliminary hearing
would be harmless error in light of the fact that Bell was found to have violated his parole at the
final revocation hearing at which he was provided counsel.  Cf. United States v. Mechanik, 475
U.S. 66, 73 (1986) ("the petit jury's verdict rendered harmless any conceivable error" in the
grand jury proceedings).  But as the respondent does not raise this point, we do not need to reach
it.

this Report and Recommendation to serve and file any objections.  See also Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. P. Kevin Castel, and to the undersigned, at 500 Pearl Street,

New York, New York 10007.  Any request for an extension of time to file objections must be

directed to Judge Castel.  If a party fails to file timely objections, that party will not be permitted

to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474

U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &

Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) .

Dated: May 18, 2010
       New York, New York


                                              _____
                                              GABRIEL W. GORENSTEIN
                                              United States Magistrate Judge


Copies sent to:

Albert Bell
78-B-1769
Great Meadow Correctional Facility
P.O. Box 51
Comstock, NY 12821-0051

Ashlyn Dannelly
Lea L. La Ferlita
Assistant Attorneys General
120 Broadway
New York, NY 10271

this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a),

(b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. P. Kevin Castel, and to the undersigned, at 500 Pearl Street,

New York, New York 10007. Any request for an extension of time to file objections must be

directed to Judge Castel. If a party fails to file timely objections, that party will not be permitted

to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474

U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &

Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) .

Dated: May 18, 2010
     New York, New York

                          GABRIEL W. GORENSTEIN
                          United States Magistrate Judge

Copies sent to:

Albert Bell
78-B-1769
Great Meadow Correctional Facility
P.O. Box 51
Comstock, NY 12821-0051

Ashlyn Dannelly
Lea L. La Ferlita
Assistant Attorneys General
120 Broadway
New York, NY 10271

18